OPINION
Plaintiffs-appellants, Francine Walters and Joseph Walters, appeal the decision of the Butler County Court of Common Pleas granting the summary judgment motion of appellees, Middletown Properties Company, Middletown Properties Company Ltd., Paran Management Company (hereinafter collectively "Paran") and Ed Hollon dba Hollon's Lawn Care Service ("Hollon") in a slip-and-fall case. We affirm the decision of the trial court.
On February 7, 1998, Francine Walters ("appellant") drove to Sally Beauty Supply ("Sally's"), located in the Middletown Shopping Center, and parked her car. The shopping center is owned by Paran. It had snowed three to four inches a few days prior, but there was no snow on the parking lot, only on the landscaped dividers that were located between the parking area and the shopping center. The snow had been plowed and piled onto the landscaped dividers by Hollon, who was employed by Paran for snow removal purposes.
The snow on the dividers would melt during the warmer daytime temperatures, with the runoff water forming puddles. This water would then refreeze at night but melt again the next day when the temperature rose. On February 7, 1998, the temperature was approximately 39 to 40° and it was sunny. There was a walkway that passed through the landscaped dividers that appellant planned to utilize to walk to Sally's. This walkway was the most direct route to Sally's. Appellant noted that there was a puddle of water across the walkway as the result of melting snow. She did not see any ice beneath the surface of the puddle before she stepped into it, slipped, and fell to the ground. She injured her right arm and shoulder. From her previous experience in northern climes, appellant believed it was ice underneath the water puddle she slipped on. Faye Bush, the manager of Sally's, came out to aid Walters after seeing her fall.
Appellant subsequently filed a negligence action against appellees. In her filing, she included affidavits from Faye Bush and Kathy Spicer, an employee of Sally's. She also included the affidavit of Terry Geier, who had worked in the commercial plowing business since 1978.
Bush stated that she had called Paran to inform them of prior icy conditions in the parking lot and walkway, asking them to clear the areas. Spicer stated in her affidavit that the walkway was "icy slick" that morning, and that she too almost fell.
Geier testified in his affidavit that the snow should not have been placed on the landscaped dividers, but instead plowed away from the parking spaces. He stated that the slope of the parking lot permitted the runoff from the snow piles to flow back onto parking spaces and pool in any uneven area.
In September 2001, the trial court granted Paran's and Hollon's summary judgment motions. The trial court found that there was no genuine issue as to Paran's prior knowledge of icy conditions. Further, the trial court found that appellant's negligence claim against Paran and Hollon failed for lack of a genuine issue of material fact. Thus, judgment was rendered for appellees as a matter of law. Appellant now appeals the trial court's decision, raising one assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS WHEN IT GRANTED APPELLEES' MOTION FOR SUMMARY JUDGMENT.
An appellate court's review of a summary judgment decision is de novo.Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336. Under a Civ.R. 56(C) motion for summary judgment, the movant must demonstrate that: "(1) [there is] no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Civ.R. 56(C); Welco Industries, Inc., v. Applied Companies
(1993), 67 Ohio St.3d 344, 346.
The nonmoving party may not rest upon the allegations or denials in the pleadings, but must affirmatively demonstrate the existence of genuine issues of material fact to prevent the granting of a motion for summary judgment. Civ.R. 56(C); Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,115. In deciding whether there is a genuine issue of material fact, the evidence must be construed in the nonmoving party's favor. Angel v. TheKroger Company, Warren App. No. CA2001-07-073, 2002-Ohio-1607.
To avoid summary judgment in a negligence action, "a plaintiff must show the existence of a duty, a breach of that duty, and an injury proximately resulting therefrom." Texler v. D.O. Summers Cleaners ShirtLaundry Co., 81 Ohio St.3d 677, 680, 1998-Ohio-602.
Appellant contends that Hollon negligently plowed the snow in Paran's parking lot causing runoff water to form a hazardous puddle in the middle of a parking lot walkway. She asserts that Geier's affidavit shows that the snow should have been plowed differently so as to alleviate potential icy conditions such as that which she slipped upon. Thus, appellant contends that there is a genuine issue of material fact as to whether Hollon negligently plowed the snow in the parking lot.
The parties do not dispute that appellant was a business invitee. Generally, business owners owe no duty to an invitee to remove natural accumulations of ice and snow. Sidle v. Humphrey (1968), 13 Ohio St.2d 45. There is no such duty because "[t]he dangers from natural accumulations of ice and snow are ordinarily so obvious and apparent that an occupier of premises may reasonably expect that a business invitee on his premises will discover those dangers and protect himself against them." Id. at paragraph two of the syllabus.
The Court of Appeals for Lucas County gave the following explanation as to the difference between unnatural and natural accumulations of ice and snow:
 "`Unnatural' accumulation must refer to causes and factors other than the inclement weather conditions of low temperature, strong winds and drifting snow, i.e., to causes other than the meteorological forces of nature. By definition, then, the `unnatural' is the man-made, the man-caused; extremely severe snow storms or bitterly cold temperatures do not constitute `unnatural' phenomena." Porter v. Miller (1983), 13 Ohio App.3d 93, 95.
Furthermore, it is presumed that the thawing and freezing of snow into ice is a natural phenomenon. Kinkey v. Jewish Hospital Association ofCincinnati (1968), 16 Ohio App.2d 93, 96. Thus, when a parking lot was plowed but some of the snow melted and formed an icy patch later in the day, the formed ice was considered a natural accumulation. Id. Moreover, similar to the case sub judice, snow placed upon elevated islands causing a natural runoff of water that later froze into ice was not rendered an unnatural accumulation. Hoenigman v. McDonald's Corp
(Jan. 11, 1990), Cuyahoga App. No. 56010. Therefore, appellant's contention that the icy puddle that she slipped upon is an unnatural accumulation is incorrect.
Geier's affidavit[1] is of little consequence. He states that the parking lot is sloped, and thus any runoff could pool into any "uneven area" in the parking lot. The Ohio Supreme Court has stated that "[g]enerally, no liability exists for minor imperfections in the surface of such a parking area" because slight irregularities should reasonably be anticipated in any traveled surface." Jeswald v. Hutt (1968),15 Ohio St.2d 224, at paragraph two of the syllabus. This court has previously stated that "every sidewalk, street or parking lot cannot be expected to be completely free of all constructional imperfections, defects or blemishes." Plymale v. Sabina Public Library (Dec. 21, 1987), Clinton App. No. CA87-02-005, 1987 WL 30343 at 2.
In the present case, appellant pulled into Middletown Shopping Center's parking lot around 11:30 a.m. on a sunny morning. She noted that the temperature was about 39 to 40°. She saw snow piled onto the landscaped dividers in the parking lot and assumed it was from the previous snow. As she began to walk to Sally's, she saw a puddle near the walkway. During appellant's deposition, she noted that the puddle was residue from the piled-up snow. She knowingly walked through the puddle and slid on ice that was hidden beneath the puddle, injuring herself. We thus conclude that this puddle was open and obvious to her.
As a matter of law, natural accumulation of the runoff water into an icy puddle in an "uneven area" does not necessitate a finding of negligence. Plymdale, Clinton App. No. CA87-02-005. Snow and ice are a part of wintertime life in Ohio and hazardous winter weather conditions and their attendant dangers are to be expected in this part of the country. Id. Thus, even though some patches of ice may not be obvious, the potential for dangerous conditions in winter is obvious and so dangers from natural accumulations of ice and snow are treated by the law as open and obvious. Community Ins. Co. v. McDonald's Restaurants ofOhio, Inc. (Dec. 11, 1998), Montgomery App. Nos. 17051, 17053.
Furthermore, appellant's argument in her brief that owner appellees should not have plowed the snow is ludicrous. As the Cuyahoga County court stated in Yanda v. Consolidated Management, Inc.:
"[I]f the position competently advocated by appellants is followed to its logical conclusion, an Ohio landlord who does absolutely nothing to clear ice and snow from his properties, and allows such elements to accumulate as they will, will be entirely immune from liability as a consequence of his inaction. On the other hand, a landlord who does what he can to combat the dangerous conditions frequently recurring in our climate will be opening himself up to potential lawsuits from those who slip and fall on the inevitable patches of ice and snow eluding the plow, shovel and salt. We choose not to discourage the diligence of landlords who exercise ordinary care in undertaking to clear their properties of ice and snow in a reasonable manner." Yanda v. ConsolidatedManagement, Inc. (Aug. 16, 1990), Cuyahoga App. No. 57268.
Because this was an open and obvious natural accumulation of icy water, as a matter of law, there was no genuine issue of material fact as to whether Hollon negligently plowed the snow in the Middletown Shopping Center parking lot.
Appellant also claims that Paran had notice, and therefore superior knowledge, of the icy conditions in the parking lot walkway. She maintains that Bush, an employee of one of Paran's tenants, called on prior occasions to complain of the icy conditions in the parking lot and the walkway. Thus, appellant asserts that Paran had notice of the dangerous conditions.
Appellant submitted affidavits from Bush and Spicer, the manager and an employee of Sally's respectively. Spicer related that the conditions were "icy slick" that morning in the walkway. Bush stated that she had called Paran on prior occasions that winter to ask them to clear the parking lot and walkway for their customers. Bush also stated that two other women fell in the same general area as appellant.
A landowner has liability only where he has superior knowledge of a hazardous condition greater than that which would ordinarily be anticipated from a natural accumulation of ice and snow or where the accumulation itself is unnatural. Colleta v. Univ. of Akron (1988),49 Ohio App.3d 35. In the instant case, we have determined that the puddle of icy water to be a natural accumulation.
The trial court aptly wrote in its opinion:
 "* * * [N]othing shows that [Paran] had a superior knowledge of the [icy puddle]. The [appellants'] claim that Mrs. Walters could not see the ice. However, nothing in the record supports the conclusion that [Paran] could see it either. * * * Mrs. Walters stated that she saw there was a lot of snow in the parking divider between the walkway and saw "like a little puddle there." * * * The fact that snow and ice accumulates in the parking lot in prior winters and on prior days does not impute a superior knowledge onto [Paran]."
We agree with the trial court's reasoning and find that Paran did not have superior knowledge of the conditions.
We find that the icy puddle was a natural accumulation and as such open and obvious. Community Ins. Co., Montgomery App. Nos. 17051, 17053. Appellant should have taken measures to protect herself. Because appellant failed to establish the duty element of her negligence action, summary judgment was properly granted to Paran and Hollon by the trial court. The assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., concurs.
VALEN, J., dissents.
[1] Appellees contend that the Geier affidavit was not filed with the Butler County Clerk of Courts because it is not listed in the transcript of docket and journal entries. Upon inspection of the affidavit, we note that there is a file stamp located on the document. The presence of an agency "time stamp" or "file stamp" is evidence that a document was filed. State ex rel. Consolidation Coal Co. v. Indus. Com'n. of Ohio, Franklin App. No. 01AP-274, 2002-Ohio-2395. Further, the affidavit was attached to appellant's memorandum in opposition to summary judgment. Thus, appellee had notice of the affidavit and should have objected at the time it was presented to the trial court. "Errors that are not brought to the attention of the trial court through objection or otherwise are waived and may not be raised on appeal." Gates v.Owens-Corning Fiberglas Corporation (Oct. 3, 1997), Hamilton App. Nos. C-960359, C-960416, A-9403686, 1997 WL 610127, *2 citing Stores RealtyCo. v Cleveland (1975), 41 Ohio St.2d 41, 53. As such, we find that the Geier affidavit was properly considered by the trial court.